**In re WATSON SEAFOOD & POULTRY CO., INC., a North Carolina corporation, ID Number: 56–0576172 Debtor.**

**Bankruptcy No. S–83–00734–5.**

United States Bankruptcy Court, E.D. North Carolina.

May 31, 1984.

**MEMORANDUM OPINION AND
ORDER REGARDING
ATTORNEY'S FEES**

A. THOMAS SMALL, Bankruptcy Judge.

This cause is before the court upon the application of Andrew S. Martin and Herman Wolff, Jr., counsel for the chapter 11 debtor, for the allowance of attorney's fees in the amount of $40,625 plus expenses of $925.95. The trustee, Algernon L. Butler,

Jr., filed an objection on February 27, 1984. A hearing was held on March 19, 1984, after which the trustee, with permission of the court, filed a "response" setting out further objections. Counsel for the debtor filed a "reply." The trustee's "response" raised the possibility of a conflict of interest on the part of counsel for the debtor, and a second hearing was held on May 9, 1984, to determine whether all requested fees and expenses should be denied or reduced.

**Background**

The debtor is a North Carolina corporation which was engaged in the business of growing and marketing chickens. The debtor's flock included 80,000 breeder hens, and approximately 300,000 mature chickens (worth approximately $280,000) were sold each week.

After suffering losses in four of the last five years (aggregating $5,000,000), on April 21, 1983, the debtor filed for relief under chapter 11 of the Bankruptcy Code. At the time of filing, the debtor's schedules reflected assets of $9,875,000 and liabilities of $6,282,000.

The debtor operated as a debtor-in-possession from the time of filing until October 14, 1983, when the court appointed Algernon L. Butler, Jr. as trustee.

At the time of filing, the debtor had accounts receivable totalling approximately $1,100,000, which were pledged to secure loans from Cape Fear Feed Products, Inc. (loan of $848,921.87) and Coastal Production Credit Association (loan of $2,909,-662.08). The debtor's request to use the proceeds of the accounts receivable ("cash collateral" as defined by 11 U.S.C. § 363(a)) was vigorously contested by both secured creditors, and after a lengthy hearing the debtor's request to use cash collateral was denied.

Both Cape Fear Feed Products, Inc. and Coastal Production Credit Association filed requests to lift the automatic stay. After a second protracted hearing the court continued the automatic stay but again denied the debtor's request to use cash collateral.

The debtor sought new capital, renegotiation of its contracts with its independent chicken growers, concessions from its primary purchaser, and a loan from the federal government. All of these efforts were unsuccessful.

The debtor's biggest problem, however, was that operations were unprofitable. Finally, when it appeared that the possibility for reorganization was remote, Coastal Production Credit Association asked for the appointment of a trustee. Since his appointment on October 14, 1983, the trustee has conducted an orderly liquidation of the debtor's estate.

**Counsel for the Debtor**

The appointment of Andrew S. Martin and Herman Wolff, Jr. as counsel for the debtor was authorized by order of this court on April 21, 1983. On February 6, 1984, Mr. Martin and Mr. Wolff filed an Application for Allowance requesting compensation for 325½ hours of legal services rendered from April 21, 1983 to February 2, 1984, at a rate of $125 per hour for a total fee request of $40,625. Additionally, counsel requested reimbursement for the following expenses: postage $84.32; telephone $375.31; travel $280.60; and copy expenses $212.72, for a total expense reimbursement request of $952.95. The total of the requested fees and expenses is $41,-577.95.

**Examination of Attorney's Fee Request**

■ The bankruptcy court has a duty to examine all applications for attorney's fees. This duty exists even in the absence of objections, and when objections are raised the court's review is not limited to the items in controversy. 11 U.S.C. § 329. *In re Darke*, 18 B.R. 510, 8 BCD 1059 (Bkrtcy. ED MI 1982); *In re Hamilton Hardware Co., Inc.*, 11 B.R. 326, 7 BCD 963 (Bkrtcy. ED MI 1981); *In re Penn Fruit Co. Inc.*, 26 B.R. 81 (Bkrtcy. ED PA 1982).

■ When reviewing fee applications, bankruptcy courts in the Fourth Circuit must consider the 12 factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974).

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.1978) cert. den., 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330. The twelve *Johnson* factors adopted by *Barber* are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

The twelve factors are easier to state than they are to apply. The procedure for applying the 12 factors in the Fourth Circuit is as follows:

[The court must] first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. These are essentially *Johnson* factors 1 and 5. The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of the other factors, briefly explaining how they affected the award. *Anderson v. Morris*, 658 F.2d 246, 249 (4th Cir.1981).

In this case, counsel seeks compensation for 325½ hours at the rate of $125 per hour for a total of $40,625. (Actually, 325½ hours × $125 = $40,687.50). For the reasons stated herein, the fee will be reduced to $16,817.50.

**The Conflict of Interest Issue**

Before applying the 12 *Johnson* factors, the court must consider the alleged conflict of interest and its effect on counsel's fee application.

The trustee objected to parts of the fee application because certain services were performed for parties holding interests adverse to the estate. If a conflict exists, the consequences may be considerably more severe than a disallowance of the questioned portion of the application.

The bankruptcy court for the Western District of Kentucky recently concluded that the presence of a conflict of interest requires a denial of *all* fees.

A review of the cases leads to the conclusion that once a conflict of interest is shown, attorney's fees should be entirely denied, even though the services rendered had intrinsic value and brought a benefit to the bankrupt estate. *In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842, 851, 10 BCD 1103 (Bkrtcy. WD KY 1983).

The doctrine has been applied with great severity. All fees were denied in the following bankruptcy cases in which debtor's counsel represented an interest adverse to the estate: *In re Chou-Chen Chemicals, Inc.*, 31 B.R. 842, 10 BCD 1103 (Bkrtcy. WD KY 1983); *In re Paine*, 14 B.R. 272 (D.C. WD MI 1981); *In re 765 Associates*, 14 B.R. 449 (Bkrtcy. HI 1981); and *In re B.E.T. Genetics, Inc.*, 35 B.R. 269, 11 BCD 845 (Bkrtcy. ED CA 1983). See also *In re Philadelphia Athletic Club*, 20 B.R. 328 (D.C. ED PA 1982); *In re Buchanan*, 25 B.R. 162 (Bkrtcy. ED TN 1982) and *In re Sambo's Restaurants*, 20 B.R. 295 (Bkrtcy. CD CA 1982).

The United States Supreme Court has said "Where an actual conflict of interest exists, no more need be shown in this type of case to support a denial of compensation." *Woods v. City National Bank & Trust Co. of Chicago*, 312 U.S. 262, 268, 61 S.Ct. 493, 497, 85 L.Ed. 820 (1941).

There is also a line of cases decided under the Bankruptcy Act of 1898 beginning with *Silbiger v. Prudence Bonds Cor-*

*poration,* 180 F.2d 917 (2nd Cir.1950), cert. den., 340 U.S. 813, 71 S.Ct. 40, 95 L.Ed. 597 (1950) which holds that the rule denying all compensation should be relaxed somewhat in corporate reorganization cases. See also *Securities & Exchange Commission v. Cogan,* 201 F.2d 78 (9th Cir.1951, aff'd on rehearing, 1952); *Chicago & West Towns Railways v. Friedman,* 230 F.2d 364 (7th Cir.1956), cert. den., 351 U.S. 943, 76 S.Ct. 837, 100 L.Ed. 1469 (1956); *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974).

Citing the need for flexibility in dealing with conflicts in reorganization cases, the Second Circuit Court of Appeals held

> *"Woods'* recognition of the general rule, however, does not strike us as a mandatory requirement that reorganization courts woodenly must deny compensation in every case of conflict of interest, regardless of facts." *New York, N.H. & H.R. Co. v. Iannotti,* 567 F.2d 166, 175 (2d Cir.1977), cert. den., 434 U.S. 833, 98 S.Ct. 120, 54 L.Ed.2d 94 (1977).

Several courts have followed the *Silbiger* line of cases and allowed partial fees where conflicts were present in Bankruptcy Code cases. See *In re King Resources Co.,* 20 B.R. 191 (D.C. CO 1982); *In re Devers,* 33 B.R. 793 (D.C. DC 1983); and *In re Georgetown of Kettering Ltd.,* 28 B.R. 120 (Bkrtcy. SD OH 1983), *sub nom., Hunter Savings Association v. Baggott Law Offices Co., L.P.A.,* 34 B.R. 368 (D.C. SD OH 1983).

The applicable section of the Bankruptcy Code is 11 U.S.C. § 328(c), which says:

> (c) except as provided in section 327(c), 327(e) or 1107(b) of this title, the court *may* deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed. (Emphasis added).

Conflicts of interest are contrary to our adversarial system of justice, and the prohibition against attorney conflicts must be vigorously enforced. This is particularly true in bankruptcy cases.

> "Bankruptcy is an area where there exists a significant potential for fraud, for self-dealing, and for diversion of funds. In contrast to general civil litigation, where cases affect only two or a few parties at most, bankruptcy cases may affect hundreds of scattered and ill-represented creditors." H.R.Rep. No. 595, 95th Cong., 1st Sess. 88 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 6050.

There are compelling reasons for denying all fees when a conflict of interest is present.

Nevertheless, because the bankruptcy court is a court of equity (*Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed. 197 (1966)), the bankruptcy judge should not be bound by a completely inflexible rule mandating denial of all fees in all cases. The general rule should be that all fees are denied when a conflict is present, but the court should have the ability to deviate from that rule in those cases where the need for attorney discipline is outweighed by the equities of the case. This flexibility is supported by 11 U.S.C. § 328(c), which says that the court "may" (rather than "shall") deny compensation when counsel represents an interest adverse to the interest of the estate.

### Facts Surrounding Conflict

The trustee contends that counsel for the debtor represented Roy L. Watson and R.E. Mayo and Company in connection with the purchase of real property from the estate for a sales price of $305,000. The trustee also alleges that counsel for the debtor represented Ebern T. Watson, Sr. in the purchase of two vehicles from the estate.

On December 8, 1983 Mr. Wolff sent the following letter to the trustee:

A.L. Burtler, [sic] Jr., Esquire

Attorney at Law
Post Office Box 38
Wilmington, North Carolina 28402
RE: Watson Seafood & Poultry Co., Inc.
Dear Mr. Butler:

This is to confirm our telephone conversation of December 8, 1983 wherein you were advised that my client, Roy L. Watson has offered $305,000.00 for the Raleigh plant site of Watson Seafood & Poultry Co., Inc., containing sixteen acres +.

The other conditions of the offer are that the appropriate approval for the sale will be obtained from the Court prior to closing and that closing shall be held in my office at 11:00 A.M. on December 30, 1983.

I also want to confirm the offers of E.T. Watson, Sr. to acquire the 1979 Chevrolet truck, motor # CC169F127472 for $2,400.00 and the old dump truck which is presently at the Raleigh site for $500.00.

With respect to the vehicles that Larry Watson desires to purchase, you will be receiving directly from him a written offer.

Very truly yours,

/s/Herman Wolff, Jr.

cc: Mr. E.T. Watson, Sr.

The fee application seeks compensation for the following items related to the Mayo $305,000 purchase of the Raleigh plant site:

12/06 Mtg. w/ E.T. Watson re: Raleigh Plant Site; call to Al Butler—1½

12/7 Disc. w/ E.T. Watson re: offer—¼

12/8 Discussion w/ E.T. Watson, Sr., Troy Smith, Al Butler, ltr. to Al Butler. 12/9 Disc. w/ Troy Smith; work on Order for compensation—1¼

12/10 Call to Mrs. Watson re: offer—¼

12/23 Call to Troy Smith—¼

12/27 Check on judgment at Clerk's office—¾

12/27 Disc. w/ Al Butler, Roy Watson, E.T. Watson re: conveyance of Ral. plant site. Work on prop. descript. —1¼

12/28 Call to Al Butler re: Judgment in Wake County; property description prepared; disc. w/ Roy Watson—2½

12/29 Correction of description, disc. w/ E.T. Watson, Roy Watson, Troy Smith, Al Butler; review of proposed deed & proposed order; all re: sale of Ral. Plant site—2½

12/30 Hearing on sale of Ral. prop.—2 hours Closing of sale 1½—3½

1/17/84 Mtg. w/ E.T. Watson re: offer from Town of Garner & purchase of '79 Chev. Truck; ltr. to Butler re: truck; ltr. to Butler re: cancellation of Judgment; ltr. to Butler re: Notices to E.T. Watson, Sr., E.T. Watson, Jr. & Wolff and Martin—2½

1/21/84 Prep. of 2 release deeds (Cape Fear & Howard Grain) Substitution of Trustee for Cape Fear—2½

1/23/84 Review of release deeds and substitution of trustee Letters to Rochelle & Tom Anderson—¾

Counsel's "reply" also discloses that Mr. Wolff charged third parties for 3½ hours for legal services in connection with this sale.

Mr. Wolff contends that he was not counsel for Mr. Mayo and that the reference in the December 8, 1983 letter to "my client" was a device to expedite the sale. Counsel for the debtor maintains that there was nothing improper in connection with performing the title work for Mr. Mayo because the practice of dual representation in real estate transactions is an ethical and common practice.

Counsel's representation of Mr. E.T. Watson, Sr. is reflected in the December 8, 1983 letter to Mr. Butler and in Mr. Wolff's letter to Mr. Butler of January 17, 1984 which reads as follows:

Algernon L. Butler, Jr., Esquire
Attorney at Law
P.O. Box 38
Wilmington, North Carolina 28402
RE: Watson Seafood and Poultry Co., Inc.
Dear Mr. Butler:

Relative to the purchase by E.T. Watson of the 1979 Chevrolet truck, serial number CC469F12742, it is my understanding that the time for objections expired on January 11, 1984 and that the Trustee is now prepared to convey title to the truck.

There is enclosed herewith check of E.T. Watson in the amount of $2,400.00 representing payment in full for the truck in an "as is" condition. The check is drawn on First-Citizens Bank and Trust Company account # 868346399 and is check numbered 351.

Please forward to the undersigned for delivery to Mr. Watson the North Carolina title on this truck having marked paid thereon any outstanding liens which might be shown on the title. It is understood that the transfer shall occur free and clear of any and all liens.

If you are unable to deliver the title and the vehicle free and clear of all liens, please return the enclosed check to me, unnegotiated.

Very truly yours,

/s/Herman Wolff, Jr.

Enc.

Compensation for the letters of December 8, 1983, and January 17, 1984, was requested in the fee application.

Mr. Wolff contends that any representation of Mr. Watson, Sr. was for the purpose of expediting the sale and that it is "appropriate to charge some time to the debtor." (Reply p. 3).

■ While Mr. Wolff's representation of the various purchasers may have expedited the sales, this incidental benefit does not in any way eliminate the conflict. By representation of Roy L. Watson, and R.E. Mayo & Company in connection with the sale of the Raleigh Plant, and by representation of Mr. Ebern T. Watson, Sr. in connection with the sale of two vehicles, counsel for the debtor represented interests adverse to the interests of the estate.

In addition to those conflicts there is another conflict of interest.

On April 19, 1984, Mr. Wolff filed a response on behalf of Mr. Ebern T. Watson, Sr. and his wife, Jessie S. Watson, to a motion made by a secured creditor requesting the marshalling of property of the estate and to require the immediate sale of six lots. The response filed by Mr. Watson, Sr. and his wife objected to the marshalling and maintained that the six lots were not property of the estate, but were in fact the property of Mr. and Mrs. Watson.

Counsel for the debtor sees nothing improper with the representation of Mr. Watson, Sr. in this matter. This court does not agree with that position.

Ebern T. Watson, Sr. is the 80% owner of the debtor's stock. He is also, according to the debtor's schedules, a creditor with an unsecured claim in the amount of $3,242.95. Jessie S. Watson has an unsecured claim for $6,954.45.

■ As a purchaser of property of the estate, a stockholder and a creditor, Mr. Watson, Sr. has interests which are clearly adverse to those of the debtor. Counsel for the debtor can represent only the debtor—he may not also represent a creditor, a stockholder or a purchaser from the estate; Mr. Watson, Sr. is all three.

The conflict is more than the appearance of a conflict. Whether the property is or is not property of the estate and whether it should or should not be sold for the benefit of the estate are issues on which the Watsons and the debtor are clearly adversaries.

**Sanction for Conflict of Interest**

■ To disallow compensation for only those items in which the conflict is manifested would be to impose no penalty at all. On the other hand, to disallow all compensation in this case seems to this court to be too harsh a result.

There is a rational basis in this case for dividing the fee request in two parts—pretrustee services and post-trustee services. When the trustee was appointed on October 14, 1983, counsel for the debtor's duties changed considerably. The trustee replaced the debtor-in-possession as the party

with primary responsibility for the administration of the estate. Also, there is no evidence before the court that counsel represented any adverse interest prior to the trustee's appointment.

Having balanced the need for sanctions and the inequity which would result from a denial of all fees, the court concludes that an appropriate sanction is the denial of all compensation after October 14, 1983. Accordingly, 67.5 hours will be disallowed.

### Application of 12 Johnson Factors

The pre-trustee "lodestar" is 258 hours × $125 for a total of $32,250. It is this figure to which the *Johnson* factors must be applied. Some of the *Johnson* factors will be used to adjust the hours involved while other factors will affect the hourly rate. *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (BAP-1 1982).

 It is essential that a fee application specifically itemize the time and nature of the services for which compensation is sought. *In re Horn & Hardart Baking Co.*, 30 B.R. 938 (Bkrtcy. ED PA 1983); *In re Idak Corporation*, 26 B.R. 793 (Bkrtcy. MA 1982); *In re Art Shirt, Ltd., Inc.*, 30 B.R. 318 (Bkrtcy. ED PA 1983); *In re Doyles-Lunstra Sales Corporation*, 19 B.R. 1003 (D.C. SD 1982). The fee application in this case frequently groups many items in a single description. In those instances where a grouping contains both allowable and nonallowable services, all compensation for the group was disallowed.

### Johnson Factors

 (1) Time and labor expended— all time and labor expended must be for the benefit of the debtor's estate. *In re J.V. Knitting Services, Inc.*, 22 B.R. 543, 9 BCD 834 (Bkrtcy. SD FL 1982). The fee application reflects research in connection with the cash value of life insurance on June 10, 12, 13, 14 and 15 in the amount of 5¾ hours. Counsel explained at the hearing that the research involved a determination of whether individuals could purchase the policies from the debtor. The debtor's schedules of assets do not reflect the ownership of any insurance policies, but the trustee's First Report indicates unreported policies owned by the debtor with a cash surrender value of $72,921.93 (p. 5 of First Report). If the policies were not property of the estate, the research did not benefit the estate. If the policies were property of the estate, counsel was negligent in not correcting the debtor's schedules. In either event, compensation for 5¾ hours for this research should be disallowed.

This bankruptcy court has previously held that in the absence of justification by counsel, two attorneys from the same law firm will not both be allowed to bill for intra-office conferences between themselves. *In re Landscaping Services, Inc.*, unreported opinions, Case Number: S–83–0038–5, first fee request per Bankruptcy Judge Thomas M. Moore (1983), second fee request per Bankruptcy Judge A. Thomas Small (1984). See *In re Liberal Market, Inc.*, 24 B.R. 653 (Bkrtcy. SD OH 1982).

 The fee application contains double billings for intra-office conferences between Mr. Martin and Mr. Wolff on 4/26 (1 hour), 4/27 (2 hours), 5/4 (1.75 hours), 5/13 (.75 hour), and 5/16 (1.25 hours) for a total of 6.75 hours. In the absence of any justification for the double billings, these 6.75 hours will be disallowed. Neither the debtor nor counsel for the debtor appeared at the scheduled first meeting of creditors on July 14, 1983. Nevertheless, counsel's fee application contains a request for compensation of services regarding the "creditors mtg" on 7/14 in the amount of ¾ hour; this ¾ hour will be disallowed.

 The "reply" indicates that the fee application contains 9 hours of travel time (Reply p. 1). It is the practice in this district to compensate travel time at one-half the hourly rate. *In re Whitfield*, unreported opinion, Bankruptcy Judge Thomas M. Moore, Case Number: 82–00123–4 (ED NC 1983). For ease of computation, the 9 hours of travel time will be reduced by one-half and 4.5 hours will be disallowed, but 4.5 hours will be allowed at the full hourly rate.

(2) The novelty and difficulty of the questions raised—in this case the issues were no more difficult than in the typical operating chapter 11 case.

(3) The skill required to properly perform the legal services rendered—while this case may have been a "typical" chapter 11 case, such cases require highly skilled legal representation if rehabilitation is to be successful. The attorneys for the debtor in this case are not experienced bankruptcy lawyers, however, and to some extent this was reflected in the result obtained (see Factor (8)).

(4) The attorney's opportunity costs in pressing the instant litigation—there is no evidence before the court to suggest that counsel lost other business as a result of this representation.

(5) The customary fee for like work—counsel for the debtor's customary fee is $125 per hour.

(6) The attorney's expectations at the outset of the litigation—there is no evidence before the court to suggest what counsel's expectations might have been.

(7) The time limitations imposed by the client or circumstances—the time limitations in this case, as they frequently are in chapter 11 cases, were significant. Lengthy hearings were held in the early stages of the case on relatively short notice.

(8) Amount in controversy and the result obtained—the amounts involved were substantial but the results were not good. The failure to rehabilitate the debtor was due in part to the economics of the poultry industry. It was also due in part to the debtor's failure to comply with this court's orders and inattention to basic bankruptcy practice and procedure. Counsel for the debtor is accountable for the debtor's failure to comply with this court's orders and local rules. Specifically, the debtor failed to appear at its regularly scheduled meeting of creditors (11 U.S.C. §§ 341 and 343) on July 17, 1983; the debtor paid an attorney's fee of $1,500 without court approval, and failed to file a plan of reorganization within the time limits established by court order. Additionally, secured creditors, on two occasions, (May 23, 1983 and April 20, 1984), were forced to file motions with the court requesting the debtor or counsel for the debtor to deliver information which the secured creditor had requested and which the secured creditor was clearly entitled to receive. In its order of October 14, 1983, appointing the trustee, the court found that the debtor had "manifested an indifference to the orders and requirements of this Court.", (order of October 14, 1983, p. 2).

A debtor comes to chapter 11 unfamiliar with the many requirements of the bankruptcy law and must rely upon counsel's guidance. It is the debtor's attorney's responsibility to see that many of the requirements are met.

(9) The experience, reputation and ability of the attorney—counsel is experienced in and has a reputation for tax and estate planning matters. Mr. Martin and Mr. Wolff, however, are not experienced bankruptcy practitioners and have not developed a reputation for proficiency in this field. While counsel performed competently in several losing efforts in the courtroom, counsel's unfamiliarity with basic bankruptcy law, practice and strategy was apparent in this case.

(10) The undesirability of the case within the legal community in which the suit arose—there is no evidence before the court to indicate that this was an undesirable case.

(11) The nature and length of the professional relationship between attorney and client—counsel represented the debtor and its principals for many years prior to the debtor's chapter 11 petition.

(12) Attorney's fee awards in similar cases—in this district the most experienced and skillful bankruptcy practitioners are not awarded an hourly rate in excess of $100. A $100 hourly rate will ordinarily be awarded to only the best bankruptcy lawyers in complicated cases where a good result was obtained.

**Fee Award**

Based upon factor (1), 17.75 of requested hours are disallowed. The total allowable hours is 240.25.

The court may adjust the hourly rate to reward exceptional efforts and benefits, but it may also adjust the hourly rate downward.

"(I)f a high-priced attorney performs in a competent but undistinguished manner a decrease in the hourly rate would be warranted." *In re Casco Bay Lines, Inc.*, 25 B.R. 747, 756 (BAP–1 1982).

█ Based upon factors (3), (8), (9) and (12), the court finds that $70 per hour is an appropriate rate in this case.

Attorney's fees for debtor's counsel shall be allowed in the amount of $16,817.50 (240.25 hours × $70 per hour).

Expenses are allowed in the amount of $878.15. This sum includes an adjustment in the per-mile rate for automobile travel to 20.5¢ per mile from the requested 35¢ per mile and 22¢ per mile.

This fee application is not a request for interim compensation under 11 U.S.C. § 331; accordingly, the allowed fees and expenses will not be paid at this time.

SO ORDERED.