**In re Roscoe Marvin PORTER, Jr., Debtor.**

**Bankruptcy No. 81–02167–R.**

United States Bankruptcy Court, E.D. Virginia, Richmond Division.

Aug. 29, 1985.

John A. Fox, Richmond, Va., for debtor.

James R. Sheeran, Richmond, Va., for trustee.

Robert E. Hyman, Richmond, Va., trustee.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes before the Court on the application by James R. Sheeran ("Sheeran"), counsel for the trustee, for interim compensation and reimbursement of expenses and on the motion by the debtor, Roscoe Marvin Porter, Jr. ("Porter"), for disqualification of Sheeran as counsel for the trustee. An evidentiary hearing was conducted by the Court on April 25, 1985, at which time the Court took both matters under advisement and requested the parties to file briefs in support of their positions. Upon consideration of the briefs filed by the parties, as well as the evidence adduced at the hearing and the argument of counsel, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor, Roscoe Marvin Porter, Jr., filed a voluntary Chapter 11 petition in this Court on December 28, 1981. At that time James R. Sheeran was employed by Herbert Weisberger, a creditor of Porter. Sheeran had prior to the bankruptcy been employed by Weisberger to pursue Porter on an indemnification agreement arising out of a commercial real estate land development partnership among four principal parties, *viz.*, Weisberger, Porter, Edward E. Willey, Jr., and John D. Coffey.

The representation of Weisberger by Sheeran in the state court suit on the indemnification agreement resulted in a judgment on behalf of Weisberger in the amount of $99,617.92. Weisberger had obtained relief from stay by this Court to proceed in state court to allow the state court to enter judgment on Weisberger's claim. Subsequently, on motion of Weisberger appearing with Sheeran as counsel, this Court on February 24, 1982 in an opinion by the Honorable Henry D. Evans, Judge, converted the debtor's case to one under Chapter 7. Finally, in addition to obtaining final judgment on the state court suit involving the indemnification agreement, Weisberger moved to have a certain chancery suit pending in Virginia state court between Weisberger and the Porters removed to this Court. Sheeran was counsel of record for Weisberger in the chancery suit. The purpose of the chancery suit was to set aside under Virginia law certain fraudulent and voluntary transfers alleged to have been made by Porter to his wife. The chancery cause was removed to this Court and in an opinion styled *In re*

*Porter,* 37 B.R. 56 (Bankr.E.D.Va.1984), this Court found that certain conveyances made by the debtor to his wife were in fact voidable under 11 U.S.C. § 548 and § 544.

In each of the above instances, Sheeran had represented Herbert Weisberger who was now in the freshly-converted Chapter 7 case the largest and most significant creditor by virtue of his $99,617.92 judgment. Weisberger filed a proof of claim for that amount in the case but as yet the Court has approved only a partial distribution by the trustee to the creditors in the case. Of the $99,617.92 judgment in favor of Weisberger, Sheeran expects to collect one-third (⅓) of any amount actually recovered by Weisberger on the proof of claim filed against the Porter bankruptcy estate as attorneys' fees pursuant to a contingency fee arrangement between Sheeran and Weisberger.

Due to Sheeran's intimate knowledge of the transactions between Weisberger, Porter, and other parties and because Sheeran had instituted on behalf of Weisberger the chancery suit to set aside certain conveyances of real and personal property which cause of action now accrued to the Porters' bankruptcy estate, the trustee in the Chapter 7 case, Robert E. Hyman, sought this Court's approval of the appointment of Sheeran as counsel for the trustee to continue the prosecution of the removed claim which Weisberger had initiated to set aside those transfers. Although the prosecution of this claim was at the outset the principal reason for employment of Sheeran as counsel for the trustee, the application by the trustee filed June 2, 1982 to retain Sheeran as counsel does not specifically limit Sheeran's appointment for this purpose but instead requests a general retainer to employ Sheeran to perform legal services for the trustee. With no objection having been filed by any party and the Court deeming it proper to do so, the Court approved the employment on June 8, 1982.

Sheeran testified that prior to assuming the mantle of counsel for the trustee, Sheeran withdrew from representation of Weisberger in connection with the case. Sheeran stated that he fully disclosed to the trustee his prior relationship with Weisberger and his contingency fee arrangement arising out of the state court judgment on the indemnification agreement. Sheeran testified that his only remaining connection with Weisberger in the capacity of counsel was in an unrelated case in Virginia state court not connected with the Porter bankruptcy or any of the aforementioned lawsuits. Sheeran testified that the case had been pending for approximately two years without involvement by Sheeran except to file a responsive pleading. Upon Sheeran's withdrawal from the representation of Weisberger, the latter retained the services of the law firm of Hirschler, Fleischer, Weinberg, Cox & Allen to represent him in connection with the proceedings in this case.

The trustee with Sheeran as his counsel prosecuted the fraudulent and voluntary conveyance claim and recovered a judgment in this Court in the amount of $55,000 which benefited the estate. The other assets which the trustee could pursue included an alleged claim which Porter had against Edward E. Willey, Jr. ("Willey") for contribution under the indemnification agreement. As a result of the real estate partnership arrangement entered into by the parties in the early 1970's, Porter, Willey, and Coffey had agreed to indemnify Weisberger for any financial liability incurred by the partnership. However, Willey subsequently withdrew from the partnership and obtained a release from any liability with respect to partnership debts from all parties except Porter. Willey also sought and received an indemnification from Weisberger for any of the partnership's debts. Thus, Porter retained a claim for contribution against Willey on any amount Porter would have to pay Weisberger pursuant to the $99,617.92 judgment on the indemnification agreement, but Willey himself had been indemnified by Weisberger to the extent of any debts of the partnership. Finally, to complete the picture, the Court has previously noted that Sheeran's agreement with Weisberger for attorney's fees in connection with the suit on

the indemnification agreement against Porter had been a one-third contingency fee on any amount actually recovered by Weisberger on the judgment. Weisberger has to date probably received some monies on his proof of claim as a result of this Court's approval of a partial distribution by the trustee, and if Weisberger receives from the estate one hundred percent (100%) of his claim, Sheeran is entitled under his attorney fee arrangement to one-third of the judgment amount, *i.e.*, $33,205.97.

With respect to the claim of the estate against Willey for contribution on the $99,-617.92 indemnification judgment, Sheeran testified that it was his opinion that the claim was essentially "worthless" because the statute of limitations had run on the enforcement of the indemnification agreement signed by the parties in 1972 and that in any event the right to contribution had not arisen since no payment had been made by Porter on the principal liability to Weisberger. Sheeran testified that he was authorized by the trustee to propose to Willey that the claim be settled for $1,000 on the basis that the claim really wasn't worth anything but that it had a "nuisance value" to the estate because Willey might be willing to pay $1,000 to avoid costly uncertain litigation. Sheeran testified that the trustee was in agreement that the claim was not worth more than $1,000.

Sheeran initiated contact with Willey to settle the claim. Due to Weisberger's indemnification of Willey, however, Sheeran was required to negotiate with counsel for Herbert Weisberger on settlement of the claim. Weisberger agreed to pay the $1,000 and the trustee thereafter filed a motion for approval of the compromise of the claim and a hearing was held thereon.

At the hearing on approval of the compromise and settlement of the claim, the debtor objected and the Court found it prudent to hold a sealed bid auction in order to allow the debtor or any other party to buy the cause of action from the trustee if they believed it was worth more than $1,000. The high bidder in the auction was Weisberger who paid $16,000 for the claim.

Subsequent to the sealed bid auction of the claim, the debtor filed an objection to the auction and a motion to disqualify Sheeran as counsel for the trustee on January 7, 1985. A hearing was held on the debtor's objection and motion to disqualify Sheeran on March 1, 1985 at which time the Court denied the objection and continued the hearing on the debtor's motion to disqualify Sheeran as counsel for the trustee. The denial of the debtor's objection to the Court's holding of a sealed bid auction of the claim was appealed by the debtor and is pending in the United States District Court for the Eastern District of Virginia. Subsequently, on April 4, 1985, Sheeran filed an application for interim compensation and reimbursement of expenses seeking attorney's fees in the amount of $7,915 for work performed from June 11, 1982 through January 14, 1985 in connection with the case. Both the debtor's motion to disqualify Sheeran as counsel for the trustee and Sheeran's application for interim compensation were scheduled for a hearing on April 25, 1985 at which time Sheeran was examined by interested parties relative to his application for compensation and any conflict of interest he may have had which might disqualify him under applicable provisions of the Bankruptcy Code.

## CONCLUSIONS OF LAW

### I. *Motion to Disqualify Counsel for Trustee*

Prior to reaching the substantive issues raised by counsel for the trustee's application for interim compensation, the Court should consider the debtor's motion to disqualify Sheeran. The debtor's motion and brief in support asserts that Sheeran must be disqualified as counsel for the trustee because (1) he holds an interest adverse to the estate, and (2) he is not "disinterested" because his position of seeking to recover a contingency fee out of assets of the estate paid to a former client gives an appearance of impropriety where his duties in representing the trustee would entail negotiating the settlement of another claim of the estate with the same client.

Congress has enacted in Title 11 of the United States Code certain standards which must be met by professional persons whom the trustee seeks to employ to carry out the duties imposed on the office of the trustee. Those provisions are contained in 11 U.S.C. § 327(a) which allows the trustee, with the Court's approval, to employ an attorney provided the attorney does not hold or represent an interest adverse to the estate and is disinterested.[1]

In defining what constitutes an adverse interest or disinterestedness pursuant to § 327(a), Congress saw fit to define what constitutes a "disinterested person" in 11 U.S.C. § 101(13).[2] In subparagraph (E) of § 101(13), a disinterested person is defined as one that "does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason." 11 U.S.C. § 101(13)(E). Thus, Congress has set out in § 101(13)(A)–(D) four specific situations in which a person would not be disinterested within the meaning of § 327(a), and in addition Congress has included a "catch-all" clause in subparagraph (E) to prohibit the appointment of persons who have other possible conflicts of interest with the estate which the trustee represents. Although § 327(a) requires independently of any consideration of disinterestedness pursuant to § 101(13) that attorneys appointed for the trustee not hold or represent an interest adverse to the estate, it would appear that the "adverse interest" test contained in § 327(a) is already included in the definition of "disinterested person" in § 101(13)(E). Accordingly, the debtor's two grounds of disqualification in this case, *i.e.*, that Sheeran represents an interest adverse to the estate and Sheeran is not disinterested, are not entirely separate inquiries. Rather, should the Court find that Sheeran holds a material adverse interest to that of the estate for any reason, the conflict of interest would disqualify Sheeran as a disinterested person under § 101(13)(E).

A qualification of the disinterested standard set out in § 327(a) is found in 11 U.S.C. § 327(c).[3] Prior to July 10, 1984, when the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Public Law 98–353, 98 Stat. 333, was enacted, § 327(c) provided that a person would not be disqualified for employment under § 327 by the trustee *solely* because of a prior representation of a creditor, but that a person could not concurrently represent

---

1. 11 U.S.C. § 327. Employment of professional persons.

    (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

2. 11 U.S.C. § 101. Definitions. In this title—
    (13) "disinterested person" means person that—
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not an investment banker for any outstanding security of the debtor;
    (C) has not been within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

    (D) is not and was not, within two years before the date of the filing of the petition a director, officer or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
    (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in subparagraph (B) or (C) of this paragraph, or for any other reason.

3. 11 U.S.C. § 327(c). Employment of professional persons.

    (c) In a case under chapter 7 or 11 or [sic] this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

in connection with the case a creditor while simultaneously employed by the trustee. Although subsection (c) of § 327 was amended in 1984, the amendment only applies to cases filed on or after ninety (90) days after July 10, 1984. *See* § 553 of BAFJA, Public Law 98–353, 98 Stat. 333; *see also In re Roberts*, 46 B.R. 815, 823 (Bankr.D.Utah 1985). Inasmuch as the case at bar was filed on December 28, 1981, this Court must apply the Code as it existed prior to the 1984 amendments. Although not applicable, the Court notes that the amended § 327(c) does not bar an attorney's concurrent representation of a creditor and the trustee unless there is (1) an objection by another creditor and (2) the Court finds that there is an actual conflict of interest.[4]

In the instant case, Sheeran has not violated the provisions of § 327(c) which are applicable to this case. The undisputed testimony is that Sheeran terminated his relationship as counsel for Weisberger in connection with the case prior to his employment by the trustee on June 8, 1982. Although Sheeran testified that he was counsel of record for Weisberger in a state court suit still pending, there was no testimony or evidence to rebut Sheeran's statement that the state court suit was not in connection with this case. Finally, the mere fact that Sheeran formerly represented Weisberger as a creditor in the debtor's bankruptcy does not by the explicit terms of § 327(c) foreclose or disqualify Sheeran's employment by the trustee. In fact, the trustee has a strong interest in selecting his own counsel. *See In re Mandell*, 69 F.2d 830, 831 (2nd Cir.1934). However, the Bankruptcy Code requires that the trustee's interest in choosing his own counsel be balanced against the interests of creditors and other parties in seeing that the trustee's office is observed by both the trustee and his counsel with the highest standards of conduct associated with their fiduciary obligations. Therefore, the Court must examine Sheeran's conduct in light of those high standards.

The basic query to be resolved is whether Sheeran's contingency fee arrangement with Weisberger, in which Sheeran only gets paid if Weisberger recovers on his proof of claim in the debtor's bankruptcy, constitutes holding an interest which is adverse to any interest of the estate. At first blush, it would appear that Sheeran's personal interest in recovering on his contingency fee would coincide with the estate's interest in maximizing assets for all creditors since the greater the sum recovered for the estate the more likely Weisberger would be paid in full on his proof of claim and Sheeran would be paid in full on his contingent fee. This apparent unity of interests worked to benefit the estate in regard to the trustee's cause of action against the debtor and his wife to recover certain fraudulent and voluntary conveyances. The estate recovered a judgment for $55,000 which increased the assets of the estate to the benefit of all creditors and to the ultimate benefit of Sheeran. It should be noted that Weisberger is far and away the single largest creditor in the estate and most of the assets to be recovered would inure to the benefit of Weisberger and, therefore, Sheeran. There was no objection by Porter with respect to the handling of this particular adversary proceeding by Sheeran, and the Court can find no conflict of interest at this juncture in Sheeran's representation of the trustee.

However, the debtor argues that a conflict arose when Sheeran began to represent the trustee in connection with the Willey asset, *i.e.*, the claim for contribution. It is here that the debtor argues that Sheeran was not disinterested because had the claim against Willey been pursued in court, it would have ultimately involved Willey's indemnitor Weisberger who ulti-

---

4.  11 U.S.C. § 327(c) (as amended).

   (c) In a case under chapter 7 or 11 or [sic] this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor, in which case the court shall disapprove such employment if there is an actual conflict of interest.

mately would have had to make payment on the claim for contribution. The fact that Sheeran did not vigorously pursue that claim, but rather sought to settle the claim for a nominal sum is an indication in the debtor's mind that Sheeran's personal interest in recovering his contingency fee interfered with his duty of undivided loyalty to the trustee and to the estate to pursue all possible claims.

Sheeran responds to the debtor's accusation with the argument that the claim was worthless and he was justified in advising the trustee to settle the matter for a nominal sum. However, whether or not the claim had any substantial value misses the point. The point is not whether Porter had a valid claim for contribution or whether Willey would or could have sought indemnification from Weisberger or even whether Weisberger could have set off any amount owed to him under his proof of claim against any amount he may have owed to indemnify Willey, but rather the question is whether Sheeran should have been in the position of advising the trustee on such matters in the first instance. The Court finds that Sheeran's personal interest in recovering on his contingency fee out of the proceeds which the estate would pay to Weisberger on his proof of claim would give the appearance of a conflict of interest or divided loyalty if Sheeran chose not to pursue a claim which ultimately would result in liability against a former client. The relevant inquiry is not what did happen, but what might have been. It is the potential for conflict which should have given Sheeran pause in accepting the representation of the trustee in his claim against Willey.

The Bankruptcy Code does not set out with any great specificity what constitutes a conflict of interest other than that found in § 101(13). Thus, the bankruptcy courts have looked to the state professional rules of conduct in defining conflicts of interest. *In re Roberts*, 46 B.R. 815, 830–33 (Bankr. D.Utah 1985). The Court finds that attorneys who appear before this Court in any capacity are bound by the Virginia Code of Professional Responsibility containing can-

ons of ethics, disciplinary rules and ethical considerations. *See In re Stancraft*, 39 B.R. 748, 752 (Bankr.E.D.Va.1984).

In examining the Virginia Code of Professional Responsibility, the Court finds that Disciplinary Rule (DR) 5–101 is applicable in this case. This rule provides in pertinent part that "(A) A lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client may be affected by his own financial, business, property, or personal interest, except with the consent of his client and after full and adequate disclosure under the circumstances." The rule is designed to enforce Canon 5 of the Code of Professional Responsibility which states that "a lawyer should exercise independent professional judgment on behalf of a client." In this case, Sheeran's own financial and personal interest can be seen to possibly have affected the exercise of his independent professional judgment on behalf of the trustee and, thus, Sheeran was prohibited from accepting the employment except on consent of the trustee after full and adequate disclosure. The Court finds from the unrebutted testimony of Sheeran that the latter's contingency fee arrangement with Weisberger was fully and adequately disclosed to the trustee and that the trustee consented to the representation. Accordingly, the Court cannot find that Sheeran violated this or any other disciplinary rule in connection with this case.

However, the Court is of the opinion that Sheeran should have avoided the representation under the ethical considerations promulgated in connection with the disciplinary rules. In particular, Ethical Consideration (EC) 5–1 states that "[t]he professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interest, the interest of other clients, nor the desires of third persons should be permitted to dilute his loyalty to his client." Moreover, Ethical Consideration (EC) 5–2 states that "[a] law-

yer should not accept proffered employment if his personal interests or desires may affect adversely the advice to be given or services to be rendered to the prospective client. After accepting employment, a lawyer carefully should refrain from acquiring a property right or assuming a position that would tend to makes his judgment less protective of the interests of his client."

The Court finds that these ethical considerations should have guided Sheeran to exercise his discretion to decline to represent the trustee in the estate's claim against Willey. It is counsel's responsibility to protect the integrity of the Court and the proceedings before it by "divest[ing himself] of any personal interest which might be reflected in his decision concerning estate matters." *In re Philadelphia Athletic Club, Inc.*, 20 B.R. 328, 333–34 (E.D.Pa. 1982) (citing *In re Realty Associates Securities Corp.*, 56 F.Supp. 1007 (E.D.N.Y. 1944)).

Sheeran maintains that the debtor is barred by laches from raising the disqualification motion. However, this Court found in *Stancraft* that irrespective of any laches on the part of counsel raising the matter, this Court has an independent obligation to consider motions for disqualification based on conflicts of interest. *Stancraft*, 39 B.R. at 752 (citing *Empire Linotype School, Inc. v. United States*, 143 F.Supp. 627, 631 (S.D.N.Y.1956)). Although the Court finds that Sheeran's rep-

resentation of the trustee in the adversary proceeding against the debtor and his wife to recover certain fraudulent and voluntary conveyances may have been appropriate, Sheeran should not have undertaken to represent the trustee with respect to the claim against Willey for contribution because of the conflict of interest and the fact that any decision to settle the case for a nominal sum would appear circumspect in light of Sheeran's personal interest in recovering on his contingency fee. Under the facts and circumstances of this case, Sheeran was bound under Canon 9[5] and Ethical Consideration (EC) 9–6[6] to avoid not only any professional impropriety but to avoid even the appearance of impropriety. *Roberts*, 46 B.R. at 835–36. As a result, Sheeran should have withdrawn from the representation of the trustee at the point where the conflict became apparent. By failing to do so, Sheeran now subjects himself to (1) disqualification from further representation of the trustee and (2) the Court's sanctions pursuant to 11 U.S.C. § 328(c).[7]

Section 328(c) of the Bankruptcy Code allows the Court to deny compensation to an individual employed under § 327 if at any time during such person's employment, that person is found to be not disinterested or represents or holds an adverse interest to the estate with respect to the matter on which such person is employed. *Id.* The Court finds that the word "may" used in the statute vests this Court with discretion whether or not to deny all com-

---

**5.** Virginia Code of Professional Responsibility, Canon 9 (1985). A lawyer should avoid even the appearance of professional impropriety.

**6.** Virginia Code of Professional Responsibility EC 9–6.—

Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; to encourage respect for the law and for the courts and the judges thereof; to observe the Code of Professional Responsibility; to act as a member of a learned profession, one dedicated to public service; to cooperate with his brother lawyers in supporting the organized bar through the devoting of his time, efforts, and financial support as his professional standing and ability reasonably permit; to conduct himself so as to reflect credit on the legal profession and to

inspire the confidence, respect, and trust of his clients and of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety.

**7.** 11 U.S.C. § 328(c).

(c) Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

pensation or deny just that portion of the requested fees relating to the improper representation. Prior courts considering the matter have adopted a flexible approach under § 328(c) where "the need for attorney discipline is outweighed by the equities of the case." *Roberts*, 46 B.R. at 848; *In re Watson Seafood & Poultry Co., Inc.*, 40 B.R. 436, 440 (Bankr.E.D.N.C. 1984); *In re Philadelphia Athletic Club, Inc.*, 38 B.R. 882, 883 (Bankr.E.D.Pa.1984). Moreover, § 328(c) speaks of disinterest "with respect to the matter on which such professional person is employed."

This Court is of the opinion that Sheeran holds a personal interest in conflict with the interests of the estate and, thus was not disinterested within the meaning of § 101(13) and should be disqualified from any further representation of the trustee. However, with respect to Sheeran's application for interim compensation, the Court finds in its discretion that it would be unjust in the circumstances of this case to deny all compensation to Sheeran for what otherwise was a satisfactory representation up to the point that Sheeran began his representation of the trustee on the Willey claim. The Court has examined Sheeran's application for interim compensation and finds that Sheeran's representation of the trustee on the Willey claim began on April 27, 1984. Consequently, it is appropriate in this case that all of the time billed by

Sheeran for work in connection with the case on and after April 27, 1984 should be disallowed. Having determined that Sheeran must be denied compensation pursuant to § 328(c) for a portion of his representation, the Court should now proceed to examine the remainder of his application for compensation.

## II. *Application for Interim Compensation*

■ Sheeran filed an application for interim compensation pursuant to 11 U.S.C. § 330 [8] and § 331.[9] The Court finds initially that Sheeran complied with Bankruptcy Rule 2016(a) by filing with the Court an application setting forth a detailed statement of the services rendered, time expended, expenses incurred, and the amounts requested. Upon request of the Court at the hearing on April 25, 1985, Sheeran provided the original documentation for his charges concerning his representation of the trustee. The only question remaining for the Court to consider is whether or not the compensation requested by Sheeran is reasonable within the meaning of § 330(a)(1) and meets the twelve-point test set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974) as adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir.1978).[10] Sheeran's application

---

8. 11 U.S.C. § 330. Compensation of officers.

(a) After notice to any parties in interest and to the United States trustee and a hearing, and subject to sections 326, 328, and 329 of this title, the court may award to a trustee, to an examiner, to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such trustee, examiner, professional person, or attorney, as the case may be, and by any para-professional persons employed by such trustee, professional person, or attorney, as the case may be, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

(b) There shall be paid from the filing fee in a case under chapter 7 of this title $20 to the

trustee serving in such case, after such trustee's services are rendered.

9. 11 U.S.C. § 331. Interim compensation.

A trustee, an examiner, a debtor's attorney, or any professional person employed under section 327 or 1103 of this title may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement.

10. These factors include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of

for interim compensation requests reimbursement for 79.15 hours of work expended from June 11, 1982 through January 14, 1985, at a requested hourly rate of $100 per hour. However, 14 hours must be deleted from Sheeran's application for compensation as a result of the disqualification. Thus, Sheeran is eligible for compensation for the remaining 65.15 hours relating to his representation of the trustee in connection with the adversary proceeding against the Porters to recover certain fraudulent and voluntary conveyances.

Although the Court has some concern about the reasonableness or necessity of some of the entries in Sheeran's application, including the billing of travel time at $100 per hour, the Court finds that on the whole the time and labor required to prosecute the estate's cause of action was considerable and that Sheeran's input of 65.15 hours is reasonable and not excessive considering that the suit was ultimately successful and the estate benefited by recovering an asset worth $55,000. Although the issues involved were not particularly novel or difficult, there is always an opportunity cost to be considered where counsel might have been pursuing other matters for other clients. The experience, reputation, and ability of counsel for the trustee is satisfactory and the Court finds that the estate more likely than not saved money to the benefit of creditors by hiring an attorney who was familiar with the parties and the transactions between them. In addition, the Court can find no duplication of effort inasmuch as Sheeran was the only attorney who expended time on behalf of the trustee in this matter. Finally, although no party in interest including the United States Trustee objected to any particular item in the debtor's application for compensation, the Court is under a duty to determine independently whether the application complies with the applicable provisions of the Code. *See In re United Rockwool, Inc.,* 32 B.R. 558, 560 (Bankr.E.D.Va.1983). In this case, the Court has undertaken to scrutinize counsel's application and makes a finding that the 65.15 hours spent by Sheeran relative to the cause of action against the debtor and his wife is reasonable in light of the results obtained and should be allowed.

In accordance with the foregoing, the Court should (1) disqualify Sheeran from further representation of the trustee in this case effective April 27, 1984, (2) deny all compensation to Sheeran for time spent in connection with the estate's claim against Willey which would include the 14 hours requested in the instant application, and (3) approve compensation for 65.15 hours of time at $100 per hour for legal services performed in connection with the estate's claim against Porter and his wife.

An appropriate Order will issue.

other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases." *In re Jones,* 13 B.R. 192, 194 (Bankr.E.D.Va.1981).