In the Matter of **BUTTERFIELD LIMITED PARTNERSHIP**, Debtor.

**Bankruptcy No. 90–20423–S.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 21, 1990.

Sheldon S. Toll, Daniel M. Stockrahm, Detroit, Mich., for Honingman, Miller, Schwartz & Cohn.

Claretta Evans, Staff Atty., Office of the U.S. Trustee, Detroit, Mich.

## OPINION AND ORDER IN CONNECTION WITH APPLICATION OF DEBTOR TO EMPLOY HONINGMAN, MILLER, SCHWARTZ & COHN AS ATTORNEYS FOR THE DEBTOR

WALTER SHAPERO, Bankruptcy Judge.

The debtor has filed an application seeking to employ Honingman, Miller, Schwartz & Cohn ("HMS & C") as its attorney in this Chapter 11 proceeding which was filed on or about November 26, 1990. The United States Trustee has objected to the appointment on the grounds which will be indicated and a hearing was noticed and held on December 18, 1990. The Court finds the following facts predicate to its conclusion:

(A) The debtor is a limited partnership, the general partner of which is Anthony S. Brown Development Company, Inc., a corporation ("ASB") whose sole or principal shareholder, and controlling officer and director, is Anthony S. Brown.

(B) The sole limited partner of debtor is Entertainment Publications Realty, Inc., a corporation in which Anthony S. Brown has no ownership interest or control, and which is or will be independently represented in these proceedings.

(C) The business of the debtor was and is the construction, ownership and operation of an office building in Troy, Michigan; the limited partner is also the principal tenant in that building.

(D) The managing agent for the building is ASB Asset Management Inc., ("ASB Management"), a corporation in which Anthony S. Brown is the sole or principal, and controlling shareholder, officer and director.

(E) Debtor's schedules indicate that ASB is an unsecured creditor with a claim of approximately $809,940.42 and that ASB Management is an unsecured creditor with a claim of $96,671.55. Total unsecured claims are listed at $1,494,000.00. There are certain other listed unsecured creditors or claims, which also may be those of entities or claimants related to, or controlled by Anthony S. Brown. The second largest unsecured claim listed, after that of ASB, is that of the limited partner, for some $200,000.00.

(F) HMS & C represents ASB, as well as ASB Management and Anthony S. Brown, as well as certain other unsecured trade creditors either generally and/or specifically on other matters that are said to be unrelated to this bankruptcy.

(G) HMS & C is itself a relatively small unsecured creditor.

(H) In its application HMS & C has indicated that it would not represent ASB or ASB Management or Anthony S. Brown or any of its other clients who might be unsecured creditors in any matter having to do with this bankruptcy, and, would waive its own unsecured claim. At the hearing in this case it was also indicated that there may be in existence another limited partnership in which ASB is the general partner and Entertainment Publications Realty Inc. is similarly a, or the, limited partner.

(I) At the hearing the applicant represented that the limited partner had no objection to the appointment of HMS & C as the attorney for the debtor.

■ Since this case seems to be proceeding apace (i.e.: a Plan and Disclosure Statement were filed on December 12, 1990), the Court feels it must perforce act quickly. Under the Bankruptcy Code it is not disputed that the attorney for the debtor must be "disinterested" which among other

things means it does not have an interest materially adverse to the interest of the estate or a class of creditors by reason of any direct or indirect relationship to or in connection with or interest in the debtor, or for any other reason. It is the claim of the U.S. Trustee that HMS & C is not disinterested. In *In re McKinney Ranch Associates*, 62 B.R. 249 (Bankr.C.D.Cal.1986), the court stated:

> The bankruptcy disqualification rule is substantially broader than the ethics rule. Section 327 disqualifies counsel for a trustee or a debtor in possession who represents any actual adverse interest. *In re Watson Seafood & Poultry Co.*, 40 B.R. 436, 442 (Bankr.E.D.N.C.1984); *cf. Woods v. City National Bank & Trust*, 312 U.S. 262, 61 S.Ct. 493, 85 L.Ed. 820 (1941) (same rule under Bankruptcy Act). Moreover, it also disqualifies counsel who represents a potential adverse interest in most cases.
>
> Strong policy reasons support the prohibition of the simultaneous representation of potential conflicts by counsel for a trustee or a debtor in possession. It is the duty of counsel for the debtor in possession to survey the landscape in search of property of the estate, defenses to claims, preferential transfers, fraudulent conveyances and other causes of action that may yield a recovery to the estate. The jaundiced eye and scowling mien that counsel for the debtor is required to cast upon everyone in sight will likely not fall upon the party with whom he has a potential conflict: Any potential conflict or interest represents a potential to overlook an asset or defense of the estate. Thus a potential conflict of interest, while it may be otherwise ethically proper, it not normally permitted under section 327.
>
> \*  \*  \*  \*  \*  \*
>
> Because of his fiduciary duties, a general partner of a limited partnership will always be a potential target of claims by a limited partnership debtor. A general partner is responsible for the day to day affairs of the business, and makes the policy decisions that lead to the financial problems that result in bankruptcy. This may involve a breach of fiduciary duty or securities law violations.
>
> The general partners may have received preferential transfers, or have received property of the estate. In addition, a general partner may have given a guaranty of the partnership debts. Counsel for debtor will likely be required to examine the relations between the partnership and its general partners for possible claims against them. Thus the potential conflict in the representation of a general partner of a limited partnership will always disqualify an attorney from simultaneously representing the limited partnership as a debtor in possession or from representing the trustee of a limited partnership.

*McKinney,* 62 B.R. at 254, 255–56.

█ Put simply, in this case the question is—does HMS & C's natural interest in keeping and maintaining its relationship with the general partner of debtor, and/or its principal, and/or its associated enterprises (and other unsecured creditors as well) in respect to matters unrelated to bankruptcy proceedings involving this debtor, provide a basis for a finding of such a lack of disinterestedness, as would preclude HMS & C from becoming the attorney for the debtor? Given the indicated facts as to the nature and extent of the relationship, and the principles enunciated in the *McKinney* case (to which this Court subscribes) this Court says yes.

Admittedly we do not here have the situation of an actual existing conflict or adverse interest such as would exist if HMS & C were "simultaneously" representing both the debtor and the general partner in matters related to this bankruptcy. However, in this Court's view the specific undertaking of HMS & C not to represent the general partner or related entities or individuals in matters related to this bankruptcy does not cure the problem because the problem as the Court sees it, is precisely the apparent continuing representation by HMS & C of those individuals and entities "simultaneously" in matters unrelated to the bankruptcy, and the Court's view that the quoted principles enunciated in *McKinney* apply equally in that situation.

It is true, as HMS & C argues, that the general partner of a limited partnership debtor in possession, as it generally has a right to do, will be the entity that will choose counsel for the debtor, and therefore it will likely choose someone whom it perceives (whether that perception turns out to be true or not) will act in a way that minimizes problems for that general partner. Maybe so, but in exercising its overriding responsibility in seeing that the system works properly, and irrespective of any consent thereto by the limited partner, the very least the Court can do (short of taking the choice of counsel away from the general partner—a course of action which is not open to the Court given the facts at hand) is to create a situation where debtor's counsel is able to take the actions required of it under the Rules of Professional Responsibility and the bankruptcy law, free of, and wholly unfettered by any concerns about its relationship to the general partner, or associated persons. It is those concerns which this Court feels constitute the potential adverse interest or the appearance of same which constitute the disqualifying factor.

Accordingly, the Court is denying the application. IT IS SO ORDERED.