**In re ICS CYBERNETICS, INC., Debtor.**

**Bankruptcy No. 88–00478.**

United States Bankruptcy Court, N.D. New York.

Jan. 9, 1989.

Grass, Balanoff, Costa & Whitelaw, Syracuse, N.Y. for debtor; Michael J. Balanoff, of counsel.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N.Y., for Creditors' Committee; Garry M. Graber, of counsel.

Kevin Purcel, Office of U.S. Trustee, Albany, N.Y.

Menter, Rudin & Trivelpiece, P.C., Syracuse, N.Y., for Connecticut Gen. Life Ins. Co., Texaco, Inc. and Nat. Westminster Bank; Jeffrey A. Dove, of counsel.

Hancock & Estabrook, Syracuse, N.Y., for EDS; Stephen A. Donato, of counsel.

## MEMORANDUM DECISION AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

### FACTS

The Court has before it for consideration two applications for interim compensation in the within Chapter 11 case.

The first application is filed by Hodgson, Russ, Andrews, Woods & Goodyear, Esqs. ("Hodgson, Russ"), the attorneys for the Official Creditors' Committee and the second application is filed by Spicer & Oppenheim ("Spicer"), the accountants for the Creditors' Committee. Both Hodgson, Russ and Spicer were appointed pursuant to § 327 of the Bankruptcy Code by Orders dated May 26, 1988, which rendered said appointments effective May 23, 1988.

The Court also has before it a request by two members of the Creditors' Committee, Alamo Rent–A–Car, Inc. ("Alamo") and TRW, Inc. ("TRW"), for reimbursement of expenses incurred in attending creditors' meetings on various dates.

All of these matters appeared on the Court's September 6, 1988 calendar at Syracuse, New York, following notice to creditors. Appearances were entered at that time by Michael J. Balanoff, Esq. ("Balanoff"), representing the Debtor, Kevin Pur-

cell, Esq. on behalf of the United States Trustee ("UST"),. Jeffrey A. Dove, Esq. ("Dove"), representing creditors, Connecticut General Life Insurance Company, Texaco, Inc. and National Westminster Bank, Stephen A. Donato, Esq. ("Donato"), representing creditor EDS, and Garry Graber, Esq. of Hodgson, Russ, representing each of the applicants.

The application of Hodgson, Russ seeks a fee of $69,520.50, together with reimbursement of expenses in the sum of $11,895.21. The application covers the period May 18, 1988 through July 31, 1988.

The Spicer application seeks a fee of $35,243.56, together with reimbursement of expenses in the sum of $1,908.00 and covers the period May 31, 1988 through June 30, 1988.

Alamo and TRW, Inc., as members of the Official Creditors' Committee, seek reimbursement of $1,075.00 and $988.69 in expenses, respectively.

The only written objection to the fee application was filed by the UST on September 6, 1988, however, at the hearing both Donato and Balanoff argued in opposition to one or both fee applications, while Dove supported the fees being sought.

The UST's objection can be summarized as opposing Hodgson, Russ' request to be compensated at its full hourly rate for travel time to and from Buffalo, New York to Syracuse, New York, separate compensation for each of several members of the firm attending a single meeting, compensation for time consumed in "educating associates" and full compensation for services which are administrative rather than legal in nature.

Finally, the UST opposes Hodgson, Russ' request that the Court adopt an approach to its fees as outlined in the recent decision of *In re Knudsen*, 84 B.R. 668 (9th Cir. BAP 1988), which permitted the attorneys for debtor to bill the debtor and be compensated monthly, without prior court approval of the fees sought subject, however, to a later review by the court, and credit against future fees or disgorgement where the court determined a particular fee to be excessive.

Balanoff objected primarily to the Spicer fee application contending that the applicant should revise its time records and identify the individuals rendering services by their position within the firm, i.e. partners, senior accountants, etc., while Donato's objection focused on an alleged excessive hourly rate being charged by Spicer and the vagueness of its time records.

Donato also objected to the amount of Hodgson, Russ' fee request as being excessive in view of the time frame (2½ months), and the absence of any specific beneficial result from those services to the creditors of the estate.

The Court also questioned Hodgson, Russ regarding the availability of non-encumbered assets of the Debtor from which the requested fees could be paid. In response, the affidavit of James P. Hassett, the Court appointed manager of the Debtor, was filed with the Court on October 27, 1988 indicating the existence of approximately 1.5 million dollars in unencumbered funds. The Court is also in receipt of correspondence from Hodgson, Russ dated December 12, 1988, responding to the UST's objection regarding its request for reimbursement of some $3,362.70 in document reproduction.

Finally, Dove, speaking for three members of the Creditors' Committee, indicated their satisfaction with Hodgson, Russ' representation of the Creditors' Committee. Subsequent to the hearing, and on September 9, 1988, the Court received correspondence from Edward M. Zachary, Esq., another member of the same firm representing the three members of the Committee, indicating, among other things, that due to the size of the case, the complexity of legal issues involved, the need for expertise in the area of bankruptcy law, the requirement of freedom from conflict of interest, and the need to limit administrative expenses, the Committee carefully selected Hodgson, Russ and Spicer, in spite of the distance of their offices from the Debtor's principal place of business and the Court.

## DISCUSSION

Before the Court addresses the merits of the two fee applications, it will examine the

procedures outlined in *In re Knudsen Corporation, supra,* 84 B.R. 668, insofar as it may apply to future fee applications of these two professionals.

The UST opposes application of the *Knudsen* rationale herein, first, because it postures that *Knudsen* is not binding precedent in the Second Circuit, and more significantly, because Hodgson, Russ and Spicer have not demonstrated any undue hardship which would result from their adherence to the prevailing procedure in this Court which permits payment of fees only after notice and hearing.

The Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"), in approving a procedure which would permit a professional to be paid a retainer during the case subject to quarterly review by the bankruptcy court, pronounced four criteria that must be met by the professional before it would permit payment of a post-petition retainer which the BAP concluded was authorized by § 328(a) of the Bankruptcy Code.

Unfortunately, in its decision, the BAP never addressed the four factors within the factual context of the case except to conclude that, "The record in the instant case clearly indicates that the criteria listed above have been satisfied." *In re Knudsen Corporation, supra,* 84 B.R. at 673. Additionally, the BAP emphasized that such a procedure as it was approving would only be available in the "rare" case. *Id.* at 672.

Without passing upon the soundness of the BAP's interpretation of Code § 328(a), the Court cannot reach the conclusion that the criteria of *Knudsen* have been met in this case, particularly where the applicants are the professionals employed by the Creditors' Committee as opposed to the Debtor, as was the case in *Knudsen.*

There are no factual allegations in either the application of Hodgson, Russ or Spicer that address the specific criteria of *Knudsen* other than conclusory statements concerning having to wait six months to be paid and protecting the Debtor from large but uncertain periodic payments of fees and disbursements.

Finally, the Court notes that the single most significant factor which clearly distinguishes *Knudsen* from the instant case was that *Knudsen* was, "essentially a controlled liquidation for the benefit of a secured creditor" and the secured creditor had consented to the payment of the periodic fees to debtor's counsel. *See In re Knudsen Corporation, supra,* 84 B.R. at 671, 673.

Thus, the Court will not permit a procedure of post-petition monthly compensation subject to quarterly review by the Court.

Considering the merits of the fee applications, the Court deals first with the Hodgson, Russ application.

Hodgson, Russ was appointed to act as counsel to the Creditors' Committee by an Order dated May 26, 1988, which provided for Hodgson, Russ' appointment to be effective May 23, 1988, the date on which the application and proposed Order were received by the UST. A review of the contemporaneous time records submitted by Hodgson, Russ indicate, however, that they seek compensation for some 17.10 hours rendered post-petition, but pre-appointment (5/18 to 5/20/88).

In light of the "per se" rule adopted by the United States Court of Appeals for the Second Circuit, post-petition, pre-appointment hours, absent excusable neglect, are not compensable. *See Progress Lektro Shave Corp.,* 117 F.2d 602, 604 (2d Cir. 1941); *Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics),* 655 F.2d 463, 469 (2d Cir.1981), *cert. denied* 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Cuisine Magazine, Inc.,* 61 B.R. 210, 216–17 (Bankr.S.D.N.Y.1986); *In re Sapolin Paints, Inc.,* 38 B.R. 807, 817 (Bankr.E.D.N.Y.1984); *Hucknall Agency, Inc. v. Nanni (Matter of Hucknall Agency, Inc.),* 1 B.R. 125 (Bankr.W.D.N.Y.1979).

While excusable neglect has been recognized as a very narrow exception to the "per se" rule, there is no indication that such neglect existed herein *See In re Amherst Mister Anthony's Ltd.,* 63 B.R. 292, 294 (Bankr.W.D.N.Y.1986); *In re Brown,* 40 B.R. 728, 731–32 (Bankr.D.Conn.1984);

*In re Manning,* 4 B.C.D. 304, 305 (Bankr. D.Conn.1978).

With regard to the post-petition, post-appointment hours, the Court acknowledges the efforts of Hodgson, Russ on behalf of the Creditors' Committee, but in reviewing its activities purely from the Court's perspective, a fee of some $70,000.00, together with an additional $12,000.00 in disbursements for some two and one-half months of work, is clearly excessive.

In examining the contemporaneous time records submitted by Hodgson, Russ, it becomes apparent that the objections of the UST are valid.

Relying upon the well-reasoned and oft-cited decision of Bankruptcy Judge Francis G. Conrad in *In re S.T.N. Enterprises, Inc.,* 70 B.R. 823 (Bankr.D.Vt.1987), the UST refers, as indicated, to instances of double compensation requested by several members of the firm, education of professionals at creditors' expense, and administrative rather than legal services being billed at the full hourly rate.

It would appear that so-called double compensation technique is the single most important factor supporting the fee request.

As an example, on June 1, 1988, the estate is billed for the time of Gary M. Schober, Esq. ("Schober"), Garry M. Graber, Esq. ("Graber"), and Douglas R. Edwards, Esq. ("Edwards") for apparently identical services with each individual attorney consuming some 13.30 hours. When computed at the respective hourly rates of $160.00 per hour for Schober, $150.00 per hour for Graber, and $85.00 for Edwards, the request for that day alone totals $5,253.00. Similar entries appear on 5/27/88, 6/9/88, 7/1/88 and 7/20/88.

With regard to legal research, Hodgson, Russ logged approximately 75 hours, as well as 30 hours of travel time to and from Buffalo, New York to either Syracuse, New York or Utica, New York. While it is obvious that the court is not privy to much of the "behind the scenes" negotiations, it seems that amount of research hours devoted to the case is somewhat excessive when the case has generated but one submitted matter to date.

It must also be kept in mind that Hodgson, Russ and Spicer are not the only professionals in this case to be compensated; in fact, the Court is yet to encounter the fee application of the Debtor's counsel and it is unaware of the fees being paid to James P. Hassett, the Debtor's Professional Manager.

It is also not clear to the Court what path the Debtor is presently following, liquidation or reorganization, since there has been no indication of when a plan and disclosure statement might be filed.

The Court must observe an accepted tenet of bankruptcy law, that absent extenuating circumstances, all administrative expenses are to be considered on a parity in a Chapter 11 case. *In re IML Freight, Inc.,* 52 B.R. 124 (Bankr.D. Utah 1985).

It is obviously too early in the case to assess the benefit to the Debtor and its creditors of Hodgson, Russ' services, and thus, the "results obtained" test of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, (5th Cir.1974) and *In the Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977) cannot be evaluated.

■ Having considered all of the foregoing, the Court will compensate Hodgson, Russ in the sum of $55,000.00, which approximates the actual time billed by Graber and Edwards, as well as the paralegals identified in the contemporaneous time records. As to the remainder of the services reflected in these records, the Court is of the opinion, at this juncture, that they were either duplicative or unnecessary to an effective representation of the Creditors' Committee over the two and one-half month period reflected in the fee application.

While this Court is desirous of compensating competent professionals, it will not condone administrative "overkill" simply because the Debtor's bank account reflects some 1.5 million in unencumbered funds.

"Results obtained" is, in this Court's opinion, the single most significant factor

in evaluating a fee application and as previously observed in this case, it is far too early to make an accurate assessment of that factor.

■ Turning to Hodgson, Russ' request for reimbursement of expenses, the UST has objected to the inclusion of a reproduction cost of $3,362.70 absent Hodgson, Russ' showing of compliance with Rule 8A of the Local Rules of Bankruptcy Practice of the Northern District of New York. As indicated, the Court has received correspondence from Hodgson, Russ in response to this objection, but it fails to address compliance with Rule 8A, and thus, reimbursement for reproduction cost cannot be approved. Additionally, the Court disallows $420.00 for Lexis research. *See In re Cuisine Magazine, Inc., supra,* 61 B.R. 210. Thus, the Court will permit reimbursement of $8,112.51 in expenses.

■ The fee application of Spicer has evoked the criticism of both Donato and Balanoff, that the accountants' hourly rates are excessive and the further criticism of Balanoff that the time records do not reflect the position within the firm of the individuals rendering the services.

The Court, after reviewing the contemporaneous time records of Spicer, again concludes that this is yet another case of "administrative overkill", the records reflecting repetitious, discussions, office conferences, reviews, analysis, extractions and preparations involving no less than thirteen members of the firm and consuming some 370.25 hours in only a one month time frame (5/31 to 6/30/88).

While the Court recognizes the fact that the Debtor itself has no Court appointed accountant, it is not clear what pure accounting tasks have been undertaken by Spicer as reflected in the instant application. As in the case of the Hodgson, Russ the estate is being charged at the hourly rate of the various members of Spicer as they confer with one another. Furthermore, it is not at all clear why apparently three partners, Jay Borow, Terrence Finkelstein and Geoffrey Lewis, billing their time at $250.00 per hour, $130.00 per hour and $160.00 per hour, respectively, had to

devote a total of 123 hours or approximately one-third of the total hours consumed by Spicer on the Debtor's case. It is also to be noted that of the 123 hours approximately 35 hours were consumed in discussions amongst each other.

With regard to the amount of the hourly rates, the courts have permitted the charging of higher hourly rates where out-of-town professionals are necessarily employed. *See In re S.T.N. Enterprises, Inc., supra,* 70 B.R. at 843; *In re Seneca Oil Company,* 65 B.R. 902 (Bankr.W.D.Okl. 1986); *In the Matter of Baldwin United Corporation,* 36 B.R. 401 (Bankr.S.D. Ohio 1984).

The Court, however, does not believe that the rates in Buffalo, New York should differ substantially from those charged in Syracuse, New York, and thus, the Court will cap Spicer's hourly rate at $210.00 per hour.

Thus, after making the necessary adjustments, the Court will approve a fee of $27,500.00, and will approve reimbursement of Spicer's expenses in the sum of $1,908.00.

Finally, the Court, in keeping with its decision in *In re Northeast Dairy Cooperative Federation, Inc.,* 76 B.R. 914 (Bankr. N.D.N.Y.1987), will approve the expenses of TRW, Inc. in the sum of $988.69 and Alamo Rent–a–Car, Inc. in the sum of $1,075.00.

All of these fees and reimbursement of expenses awarded herein are to be paid within thirty (30) days of the service upon the Debtor of a filed copy of this Order.

IT IS SO ORDERED.